IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SHONTICE M.,[1]     )
          )
    Plaintiff,   )
          )
vs.         )   **Case No. 21-cv-185-DWD**
          )
COMMISSIONER OF SOCIAL )
SECURITY,     )
          )
    Defendant.  )

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 423 and 42 U.S.C. § 1383(c). For the reasons discussed below, the final agency decision is due to be affirmed.

## Procedural History

Plaintiff applied for DIB and SSI in January 2018, alleging disability beginning on November 1, 2011 (Tr. 112, 171-172). Plaintiff later amended the alleged onset date of disability to January 30, 2018 (Tr. 330). Plaintiff voluntarily withdrew her request for disability insurance benefits at the evidentiary hearing held by an Administrative Law Judge ("ALJ") on December 12, 2019, and thus her request for DIB was dismissed (Tr. 112, 329). After the evidentiary hearing, the ALJ denied the application for benefits in a

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

decision dated March 2, 2020 (Tr. 112-126).  The Appeals Council denied Plaintiff's request for review on December 18, 2020, making the ALJ's decision the final agency decision subject to judicial review (Tr. 1-7).  *See* 20 C.F.R. § 404.981.  Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

## Applicable Legal Standards

To qualify for DIB and SSI, a claimant must be disabled within the meaning of the applicable statutes.[2]  Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520.  An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the

---

[2] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. § 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. *See Craft v. Astrue*, 539 F.3d 668, 647, n.6 (7th Cir. 2008).  For convenience, most citations herein are to the DIB regulations.

claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

Here, the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the Court is not tasked with determining whether or not Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 203 L. Ed. 2d 504 (Apr. 1, 2019) (internal citations omitted).  In reviewing for "substantial evidence," the Court takes the entire administrative record into consideration but does *not* "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; the Court does not act as a rubber stamp for the Commissioner.  *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), *as amended on reh'g in part* (May 12, 2010), *as amended on reh'g in part* (May 12, 2010), *as amended on reh'g in part* (May 12, 2010).

**The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above.  Plaintiff was 34 years old on the alleged disability onset date (Tr. 124).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability (Tr. 115).  The ALJ found that Plaintiff had severe impairments of human immunodeficiency virus (HIV), migraines, chronic pain syndrome, mild lumbar degenerative disc disease with lumbar radiculopathy and sciatica, left hip osteoarthritis, neuropathy, obesity, post-traumatic stress disorder (PTSD), and major depressive disorder (Tr. 115).  Plaintiff has non-severe impairments of hypertension, eczema, cervicalgia, vitamin D deficiency, and anemia (Tr. 115).

At step three, the ALJ found that Plaintiff does not have any impairments or combination of impairments that meet any of the listings.  The ALJ specifically reviewed Listings 1.02 (Major Dysfunction of a Joint), 1.04 (Disorders of the Spine), 11.14 (Peripheral Neuropathy), 14.11 (Human Immunodeficiency Virus infection), 12.04 (Depressive, Bipolar, and Related Disorders, and 12.15 (Trauma and Stressor Related Disorders) (Tr. 116-17). The ALJ determined that Plaintiff has mild limitations in understanding, and concentrating, persisting or maintaining pace, and moderate limitations in her ability to interact with others and in her ability to adapt and manage herself (Tr. 117-118). Finally, the ALJ found that Plaintiff has only marginal adjustment or a minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life (Tr. 118).

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), with these additional limitations:

> [Plaintiff] is able to lift up to 20 pounds occasionally and lift/carry up to ten pounds frequently. She is able to stand/walk for about six hours and sit for up to six hours in an eight-hour workday, with normal breaks. She is unable to climb ladders/ropes/scaffolds. She is able to tolerate moderately noisy work environments. She should avoid all exposure to unprotected heights and use of dangerous moving machinery. She is able to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions and routine workplace changes. She is able to tolerate no direct interaction with the public and only occasional interaction with coworkers.

(Tr. 118). At step four, the ALJ relied on the testimony of a vocational expert ("VE") to find that Plaintiff could not perform any past relevant work (Tr. 124). However, at step five, the ALJ found that Plaintiff was not disabled because she was able to perform other jobs that exist in significant numbers in the national economy (Tr. 125-26).

## The Evidentiary Record

### A.     Plaintiff's Testimony

Plaintiff was 34 years old at the time of her alleged disability onset date (Tr. 124, 138). Plaintiff has at least an 11th grade education (Tr. 139). She has prior work experience as a quality line inspector and boot laborer (Tr. 140-142, 166). Plaintiff lives with her 11-year-old son (Tr. 144). Plaintiff's mother and 27-year-old daughter come to her house daily to assist her with household chores and driving Plaintiff to her appointments because Plaintiff no longer drives (Tr. 144).

Plaintiff has HIV and her viral load is currently undetectable (Tr. 160). Plaintiff

suffers from multiple ailments, including general pain in her legs and back, migraines, anxiety, depression, and high blood pressure (Tr. 144-145, 147, 159).  Plaintiff takes multiple medications which cause various side-effects, including headaches, sleepiness, and drowsiness (Tr. 145-147, 429).  Plaintiff sees a therapist weekly and a psychiatrist monthly (Tr. 153-154).  Plaintiff takes Tramadol and ibuprofen for her body pain, but has not completed physical therapy, injections, or other orthopedic treatment although she hopes to start additional treatment in the future (Tr. 148).  Plaintiff does not use a cane or other assistive device (Tr. 148).

At the evidentiary hearing in December 2019, Plaintiff testified to her symptoms and abilities.  She testified that she has trouble with concentration while watching television, driving, or having conversations (Tr. 160-161).  She can sit for approximately 30 minutes (Tr. 147), and stand for 15 minutes, and can walk the length of approximately four houses before she's out of breath (Tr. 148).  Plaintiff can lift a small saucepan of water (Tr. 149).  Plaintiff testified that she cannot clean her house, vacuum, mop, sweep or do laundry (Tr. 151).  She can cook quick dinners, like leftovers or TV dinners, and do the dishes and clean off tables (Tr. 151-152).  Plaintiff goes to the grocery store once a month but does not attend other events outside her home because of her anxiety (Tr. 152-53).  Plaintiff does not have problems with personal care, taking a shower, or doing her hair (Tr. 159).

Plaintiff has trouble sleeping due to nightmares, body pains, and her "racing thoughts" (Tr. 161). She has anxiety attacks once a month which are more extreme than her regular anxiety (Tr. 154).  The anxiety attacks cause her to continuously cry and can

6

last for a full day (Tr. 155).  Plaintiff also suffers from migraines which cause her to stay in bed all day (Tr. 155).  These migraines occur once a week and cause blurred vision (Tr. 156).  Plaintiff's migraines are triggered by loud noise, crying, being upset, moving too fast, and not eating (Tr. 158, 166).  Plaintiff's medical records reveal consistent treatment and medication management for her impairments.  She takes pain medication for her migraines and headaches (Tr. 162).  Plaintiff's medications usually cause the migraines to resolve within 30 minutes (Tr. 157).  She also gets relief from calming down, laying down, turning the lights off, and making it quiet in the house (Tr. 158).  Plaintiff testified that her medications have helped her migraines and headaches to improve (Tr. 158).  Plaintiff does not have a neurologist and has not been referred to a neurologist (Tr. 163).

### B.    Medical Records

#### I.    HIV

Plaintiff was diagnosed with HIV in January 2005 (Tr. 544), and her medical records reveal consistent treatment and medication management.  From 2010 to 2018, Plaintiff was treated by Washington University in St. Louis Physicians (Tr. 539-621, 651-657, 759-).  Beginning in 2019, Plaintiff began receiving treatment with SIHF Healthcare (Tr. 1121).  Plaintiff's exams indicated mostly normal findings (*See, e.g.,* Tr. 546, 548, 554, 562, 565, 568, 572, 576, 579, 593, 596, 620, 656, 760, 795, 1120-1121), with reports of fatigue (Tr. 1093, 1120-1122), and occasional findings of tearfulness or crying during exams (Tr. 1120).  In her most recent exams, Plaintiff reported intermittent fatigue (Tr. 1120-1122).

#### II.    Depression and Mental Impairments

Plaintiff receives treatment from Chestnut Health Systems for her depression,

PTSD, and anxiety (Tr. 624, 660, 1245).   In August 2015, Plaintiff reported having difficulties in self-care, communicating, socialization, shopping, maintaining a healthy lifestyle, and managing her responsibilities (Tr. 629).   Plaintiff stated she had trouble coping with tragedy, and the death of five close friends and family members who passed close in time (Tr. 629).   Stephanie M. Thomas, QMHP concluded that Plaintiff needed medication management, therapy services, and community support, and a psychiatric evaluation or follow-up was recommended (Tr. 630).

On May 16, 2019, Plaintiff saw Janel Townsend, APRN M.S.N., for a psychiatric evaluation (Tr. 1244).   Townsend observed that Plaintiff meets criteria for recurrent, severe, major depression, and posttraumatic stress disorder (Tr. 1245).   Townsend observed that Plaintiff's symptoms cause a clinically significant level of distress and impairment in functioning (Tr. 1245).   Townsend increased Plaintiff's does of Effexor for Plaintiff's depression and PTSD, and instructed Plaintiff to start Vistaril for anxiety (Tr. 1250).   Plaintiff was instructed to continue participating in therapy (Tr. 1250).

On July 23, 2019, Plaintiff saw Townsend for a follow up appointment, and reported that her anxiety and depression had improved after starting her new medications (Tr. 1251), but not significantly (Tr. 1256).   Plaintiff confirmed that the symptoms worsened when she did not take the medications.   Townsend discontinued Plaintiff's Effexor and prescribed Duloxetine for depression symptoms and Plaintiff's generalized pain symptoms (Tr. 1256).   Plaintiff was instructed to discuss with her primary care physician about a referral to orthopedic or pain management (Tr. 1256).

On August 6, 2019, Plaintiff was treated by Townsend and reported having a bad

8

week (Tr. 1258). Plaintiff reported that her symptoms slightly improved when taking her medications (Tr. 1258).  Plaintiff was instructed to continue her medications and to start taking Cymbalta (Tr. 1262).  Townsend recommended that Plaintiff follow up with her medical doctors and to present to the emergency department or urgent care for an evaluation of her elevated blood pressure and continuing headaches (Tr. 1262).

Most recently, on November 5, 2019, Plaintiff was treated by Janel Townsend (Tr. 1263).  Plaintiff reported that the medication was helping, but she still had high anxiety and continued headaches and neck pain (Tr. 1264).  Townsend observed that Plaintiff was tearful, had fair to poor judgment, insight, and fund of knowledge, and no deficits in attention and concentration (Tr. 1266-1267).  Townsend concluded that Plaintiff has seen overall improvement since starting medication, but that her other medical ailments were contributing to her mood and symptoms (Tr. 1267).  Townsend instructed Plaintiff to continue her medications and increased her Cymbalta and Clondine (Tr. 1267).  Townsend advised that she wanted to try and reduce the amount of medications Plaintiff was taking but might consider adding a mood stabilizer or antidepressant at the next visit (Tr. 1068).  Townsend advised Plaintiff to continue therapy, and to speak with her case manager about setting up community support to help with her living concerns (Tr. 1068).

### III.     Chronic Pain, Headaches, and Migraines

Plaintiff's medical records reveal that she sometimes complained of pain in varied locations, including her abdomen, back, and legs.  Plaintiff has also suffered from headaches and migraines since before the alleged onset date of disability.  For example, in April 2014, Plaintiff was examined by Kathryn Hannigan, FNP, and reported

9

headaches four times a week, and sensitivity to light and nausea (Tr. 584).

From 2012 to 2018, Plaintiff was treated occasionally in the emergency department at Barnes-Jewish Hospital (Tr. 908-1054). As it relates to the current matter, Plaintiff was treated on October 24, 2012, for a migraine and headache that began 9 days prior (Tr. 908, 914). Plaintiff presented with high blood pressure (Tr. 914). Plaintiff reported that over the counter medicine provided no relief (Tr. 914). Plaintiff was emotional and tearful (Tr. 911). Plaintiff's neurological and muscular/skeletal exams were normal, and she could ambulate well (Tr. 910). Plaintiff reported sensitivity to light and sounds, and had nausea (Tr. 910). Plaintiff was treated with haloperidol (Tr. 910, 916). Her CT exam was negative (Tr. 914). Plaintiff was discharged on October 25, 2012 after her headache subsided (Tr. 925).

In 2013, Plaintiff was involved in a motor vehicle accident (Tr. 593). On September 14, 2013, an x-ray of Plaintiff's spine was performed following the accident, and indicated no abnormality (Tr. 500-501, 507). Plaintiff was treated by Debra L. Gase on October 8, 2013 (Tr. 588). Plaintiff reported participating in physical therapy and was prescribed tramadol (Tr. 590). Her exams showed no tenderness (Tr. 589). On February 24, 2015, Plaintiff was seen at the emergency department of Touchette Regional Hospital where she complained of mid to low back pain (Tr. 483). Her physical exam was normal and showed no abnormalities (Tr. 490-492). Plaintiff was discharged and counseled to follow up with her primary care doctor for additional labs and diagnosis (Tr. 494).

On August 12, 2017, an x-ray of Plaintiff's back was performed by John Zabrowski, M.D. (Tr. 1236). Dr. Zabrowski observed no evidence of fracture, malalignment,

10

destructive process, congenitally abnormality, or paravertebral mass (Tr. 1236).

On April 2, 2018, Plaintiff was evaluated by Hafiz Khattak, M.D. for a pilot cannabis program (Tr. 1064). Plaintiff presented with chronic pain in her neck, lower back, abdominal area, left knee, and head (Tr. 1063). Plaintiff reported that her pain started in 2012 because of stress (Tr. 1063). Plaintiff's examination was largely normal. Dr. Khattak observed no pain in Plaintiff's muscles or joints, no limitations in her range of motion, and normal stability, muscle strength, and tone (Tr. 1063). Plaintiff's psychiatric and neurological exams were normal, and Plaintiff did not present with depressive symptoms (Tr. 1063). Dr. Khattack recommended Plaintiff for the pilot program (Tr. 1064).

On July 2, 2018, x-rays of Plaintiff's left hip and back were performed by John Zabrowski, M.D. (Tr. 1233, 1234). Dr. Zabrowski observed no fracture, dislocation, bony destruction or bony production in her hip, but noted "moderate to severe osteoarthritis at the femoral acetabular joint with subchondral lucency of the superior lateral aspect of the acetabulum compatible was completed a subchondral reactive cyst measuring 5.7 mm (Tr. 1233). Dr. Zabrowski observed no evidence of a fracture, malalignment, destructive process, congenitally abnormality, or paravertebral mass in Plaintiff's lumbar spine, btu did not very mild multilevel degenerative changes (Tr. 1034).

Also in July 2018, Plaintiff was examined by Kathryn Hannigan, FNP, for complaints of left leg pain (Tr. 833). Plaintiff's physical exam was normal and showed normal range of motion (Tr. 833-834). Hannigan also observed that Plaintiff was tolerating her medications for hypertension and depression well (Tr. 832). Hannigan

examined Plaintiff again in August 2018, and informed Plaintiff to continue taking pain medication and that she could refer Plaintiff to physical therapy if the pain did not resolve (Tr. 840). On September 21, 2018, Plaintiff again complained of pain in her left leg (Tr. 870-871).   Plaintiff's exam indicated mostly normal findings, and a left straight leg positive (Tr. 871). Plaintiff was prescribed additional pain medication and referred to physical therapy (Tr. 886).

On April 22, 2019, Dr. Verna instructed Plaintiff to continue taking Triumeq + TDF for her migraines (Tr. 1121).  Plaintiff continued to have normal physical exams, with occasional instances of fatigue, abdominal pain, and back pain (Tr. 1106, 1111, 1116, 1075-1076).

On June 22, 2019, Plaintiff was examined by Michael Moore, M.D (Tr. 1107-1108). Plaintiff reported stomach pain, back pain, and migraines (Tr. 1106).  Plaintiff stated that she believed her back pain was either arthritis or sciatica and she felt pain when standing or walking (Tr. 1106).  Dr. Moore explained that her current medication, Gabapentin, is typically used to treat sciatica.  Dr. Moore also observed no tenderness, hepatomegaly, splenomegaly, masses or CVA tenderness in Plaintiff's abdomen (Tr. 1006).  Plaintiff was instructed to continue her medications and to return for follow-up appointments (Tr. 1107-08).

On August 6, 2019, Plaintiff was treated by Jaclyn N. Sneed, PA-C and Matthew D. Moslener, M.D. at the emergency department for high blood pressure (Tr. 892). Plaintiff reported that she felt like she had a blood pressure headache but denied having any other symptoms or an altered mental status (Tr. 893).   Plaintiff's physical exam was

normal, with unremarkable lab results (Tr. 894). Plaintiff was discharged and instructed to continue her medications and follow-up with her primary care physician (Tr. 897).

On August 22, 2019, Plaintiff was examined by John Verna, PA-C (Tr. 1094). Plaintiff's exams were normal, except for fatigue, however Plaintiff was ambulating normally (Tr. 1093). Plaintiff reported that she continued to experience intermittent migraine headaches. Plaintiff was tolerating her new HIV regimen without side effects.

On August 25, 2019, Plaintiff was examined by Michael Moore, M.D. (Tr. 1098). Plaintiff reported generalized pain throughout her body but stated that her pain no longer included palpitation (Tr. 1098). Plaintiff reported that she noticed no difference in her migraines since starting topiramate (Tr. 1098).

On September 10, 2019, Plaintiff was examined by John Magner, M.D. (Tr. 1085-1089). Plaintiff reported palpitations and shortness of breath when walking, sweeping the floor, and lying down (Tr. 1089). Dr. Magner observed unspecified lower abdominal pain and thyroid fullness (Tr. 1089). Plaintiff's physical exam was otherwise normal (Tr. 1089). Dr. Magner prescribed Ranitidine for her abdominal pain, and requested to review Plaintiff's EKG results from August 2019 (Tr. 1089-1090).

On September 16, 2019, Plaintiff was examined by John Verna, PA-C for a follow-up (Tr. 1080). Plaintiff reported feeling well, but still had intermittent migraine headaches and fatigue (Tr. 1084). Plaintiff's exams were normal with normal ambulation, normal mental status and mood, normal motor strength and no edema (Tr. 1084).

On November 7, 2019, Plaintiff was treated by Charles Ampadu, M.D. for her normal labs and follow-up (Tr. 1072). Plaintiff reported muscle aches, joint pain, and

13

back pain (Tr. 1075).  Plaintiff's exams were normal, with normal ambulating, normal and active mental status, normal motor strength and movement of extremities (Tr. 1075-1076). Plaintiff was instructed to continue her pain medication (Tr. 1076).

Most recently, on November 15, 2019, Plaintiff was treated by Charles Ampadu, M.D. at Memorial Hospital for hypertension (Tr. 1296).  Plaintiff reported chronic pain, migraines, and a headache persisting for two days (Tr. 1296).  Plaintiff complained of blurry vision, photophobia, numbness, tingling, and nausea (Tr. 1296).  Plaintiff vomited up her pain medications and had mild abdominal cramping (Tr. 1296). Plaintiff's exams were normal (Tr. 1298, 1300).  Plaintiff's CBC, CMP, chest x-ray, and head CT were unremarkable (Tr. 1300).  Plaintiff showed pain improvement with Floricent and fluids (Tr. 1300).  On November 16, 2019, Plaintiff's pain improved with Toradol, Benadryl, Reglan, and additional fluids (Tr. 1300).   Plaintiff was stable and discharged on November 16, 2019 (Tr. 1300).  Plaintiff was instructed to continue her medications, to avoid dehydration, and to follow up with her primary care provider (Tr. 1301).

### C.    Opinion Statements

On February 5, 2018, Plaintiff's mother completed a third-party function report (Tr. 352-359).  She stated that Plaintiff has back and leg pain, headaches, and depression which prevent her from working (Tr. 352).  She indicated that Plaintiff has trouble taking care of her house and son and needs help with bathing and sometimes with dressing (Tr. 353).  Plaintiff does not have limitations in caring for her hair, using the toilet, or feeding herself (Tr. 353).  She stated that Plaintiff sometimes needs reminders to take her medicine (Tr. 353-356).  Plaintiff can go outside to walk or ride in a car alone, can pay her bills, and

handle money (Tr. 353-356). She detailed that Plaintiff's impairments affect Plaintiff's ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and affect Plaintiff's memory, concentration, and abilities to complete tasks, use her hands, and get along with others (Tr. 357). She reported that Plaintiff is "good" at following written and spoken instructions; "not good" with other people or authority figures; and is "ok" at handling stress (Tr. 357-58).

On April 20, 2018, state agency examiner, Amy J. Marty, Ph.D completed a psychological evaluation (Tr. 660). Dr. Marty indicated that Plaintiff has moderate, recurrent, Major Depressive Disorder, and concluded that Plaintiff's prognosis was "guarded to fair with appropriate mental health treatment." (Tr. 663). She indicated that Plaintiff's mood symptoms significantly impair her social and occupational function (Tr. 663). She also concluded that Plaintiff appeared competent and evidenced good judgment to manage funds (Tr. 664).

On May 14, 2018, state agency consultant, Howard Tin, PSYD, completed a psychiatric review technique (Tr. 171-178, 183-184). Dr. Tin observed that Plaintiff has three medically determinable impairments: severe symptomatic human immunodeficiency virus infection, severe depressive, bipolar and related disorders, and non-severe hypertension (Tr. 183). Dr. Tin assessed Listing 12.04 (Depressive, bipolar, and Related Disorders). He concluded that Plaintiff had mild limitations in understanding, remembering, or applying information, and in her ability to adapt and manage herself (Tr. 184). He also determined that Plaintiff had moderate limitations in her abilities to interact with others and to concentrate, persist, or maintain pace (Tr. 184).

15

In assessing Plaintiff's mental residual functional capacity, Dr. Tin indicated that Plaintiff could understand and remember short simple instructions but had difficulty remembering detailed instructions (Tr. 189). He assessed that Plaintiff had a short attention span but could perform activities of daily living, household takes, shop in stores, pay bills, use a checkbook, and keep appointments (Tr. 189). Dr. Tin concluded that Plaintiff could perform simple tasks, but her work tasks should not require interaction with the general public (Tr. 189).

On May 15, 2018, state agency consultant Charles Kenney, M.D. completed a residual functional capacity assessment, indicating that Plaintiff could occasionally carry 20 pounds, frequently carry 10 pounds, and could stand, walk, or sit about 6 hours in an 8-hour workday (Tr. 186). Dr. Kenney also indicated that Plaintiff should avoid concentrated exposure to noise (Tr. 187). Dr. Kenney recommended a finding of not disabled (Tr. 178, 191).

On September 11, 2018, state agency consultant Russell Taylor, PHD completed a psychiatric review technique (Tr. 203). He assessed Listing 12.04 (Depressive, bipolar, and Related Disorders). Dr. Taylor concluded that Plaintiff had mild limitations in understanding, remembering, or applying information, and in her ability to adapt and manage herself (Tr. 184). He also concluded that Plaintiff had moderate limitations in her ability to interact with others and in concentrating, persisting, or maintaining pace (Tr. 202). In assessing Plaintiff's mental residual functional capacity, Dr. Taylor indicated that Plaintiff can understand short simple instruction (Tr. 208). Plaintiff could perform activities of daily living and household tasks, leave home alone, shop in stores, pay bills,

use a checkbook, and keep appointments (Tr. 208).  She can perform simple tasks but has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time.  Dr. Taylor concluded that Plaintiff's work tasks should not require interaction with the general public (Tr. 208).

On September 13, 2018, state agency consultant James Hinchen, M.D. completed a disability determination explanation, indicating that Plaintiff demonstrated a maximum sustained work capability of unskilled light work, and recommended a finding of not disabled (Tr. 219-220).

On July 30, 2019, Jennifer Belfeld, BSW, completed a treating source statement (Tr. 671).  Belfeld indicated that she had been Plaintiff's medical case manager since October 2017, meeting in person at least every 6 months, and speaking on the phone usually monthly (Tr. 671).  Belfeld stated that Plaintiff always appeared depressed and cried during most appointments.  Plaintiff self-reported experiencing migraines daily due to stress.  Belfeld referred Plaintiff to Chestnut Health Systems and Plaintiff reported attending appointments.  Plaintiff also self-reported having severe depression, along with lower back pain and leg pain.  Belfeld did not believe Plaintiff had seen an orthopedic specialist.  Belfeld confirmed that she could not diagnose Plaintiff because she was not a clinician, however, she does make referrals or suggestions of doctors to help Plaintiff pinpoint her exact diagnoses (Tr. 671).

## Analysis

Plaintiff makes three arguments in favor of remand (Doc. 22).  First, she argues that the RFC is conclusory and not supported by substantial evidence because the ALJ

17

did not provide an adequate explanation describing the medical evidence. Second, Plaintiff argues that the ALJ improperly evaluated Plaintiff's credibility when assessing Plaintiff's ability to perform daily activities. Finally, Plaintiff argues that the ALJ failed to properly evaluate the opinion evidence of the state agency consultants. The Court addresses these arguments in turn.

### A.    RFC Assessment

Plaintiff argues that the ALJ's RFC was not based on substantial evidence. First, she argues that the ALJ did not adequately describe the medical and non-medical evidence used to support her assessment. Plaintiff also argues that the RFC is not based on the entire record because it largely mirrors the recommended limitations made by the agency consultants in 2018, and thus did not include more than a years' worth of updated medical evidence submitted after those agency opinions were made. Finally, Plaintiff argues that the additional limitations the ALJ adopted, and which were more restrictive than those recommended by the state agency opinions, were improperly based on the ALJ's own interpretation of the medical evidence.

The RFC addresses the maximum work-related activities a claimant can perform despite the limitations that stem from her impairments. *See Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The task of assessing a claimant's RFC is reserved to the Commissioner. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone – not a treating or examining doctor – to decide."); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995) (Rejecting argument that the ALJ should have relied solely on the opinions of physicians because the determination of

RFC is an issue reserved to the SSA, who "must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do.").

The administrative record contains four functional assessments of Plaintiff's ability to work issued by the state-agency experts Dr. Kenny, Dr. Hinchen, Dr. Tin, and Dr. Taylor.  The ALJ found these opinions to be "somewhat persuasive" because they were supported by a detailed analysis and consistent with the record (Tr. 122-123).  The ALJ adopted their findings that Plaintiff could perform light work with environmental, postural, and mental limitations, but the ALJ added additional restrictions preventing Plaintiff from climbing ladders, ropes, or scaffolds, and working around unprotected heights or dangerous moving machinery, and limiting Plaintiff to occupations that did not have fast paced production requirements, and only occasional interactions with co-workers (Tr. 118).

Plaintiff argues that the ALJ did not adequately explain how each finding supported the RFC.  Instead, she contends that the ALJ should have developed her narrative more fully.  *See* Soc. Sec. Ruling 96-8P (S.S.A. July 2, 1996).  ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations.").[3]   However, Plaintiff does not identify

---

[3] Social Security Rulings "are interpretive rules intended to offer guidance to agency adjudicators." *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999). They do not have the force of law or a regulation, though they are binding on the SSA. *Id.*

which portions of the record were allegedly disregarded.  Indeed, Plaintiff does not dispute the RFC assessment except to argue broadly that the ALJ needed to better articulate her findings and conduct an additional evaluation on remand.

The Court finds that the ALJ's RFC assessment was supported by substantial evidence.  *See Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) ("Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotations and cations omitted).  The ALJ cited to detailed examination findings, medical diagnosis, and complaints in her analysis (*See* Tr. 122-23). Moreover, Plaintiff's assertion that the ALJ did not consider the entire file is unpersuasive.  Plaintiff does not articulate which portions of the record were allegedly disregarded or omitted from the ALJ's consideration, despite Plaintiff's burden to supply evidence to prove her claim of disability.  *Scheck*, 357 F.3d at 702 ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability).  Nevertheless, in reviewing the analysis, the ALJ considered the entire record and all evidence Plaintiff submitted for her review.  Although the state-agency experts did not review the evidence submitted after their opinions were completed, this does not require remand because the RFC is a determination made by the ALJ alone, and not by the examining doctors. *See Thomas*, 745 F.3d at 808.

Because substantial evidence supports the ALJ's residual functional capacity finding, the Court will not overturn the ALJ's decision on this basis.  *See Charles G. v. Kijakazi*, No. 21-CV-393, 2022 WL 2715676, at *7 (N.D. Ill. July 13, 2022) (citing *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007); *Michael B. v. Berryhill*, No. 18 C 236, 2019 WL

2269962, at *6 (N.D. Ill. May 28, 2019)).  Moreover, even if the ALJ's analysis was lacking, any error would be harmless because Plaintiff failed to identify any restrictions she believes should have been included in the ALJ's finding.  *See Jozefyk v. Berryhill,* 923 F.3d 492, 498 (7th Cir. 2019) (any error in RFC was harmless because claimant cited no evidence of greater limitations nor hypothesized any additional work restrictions); *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) ("There is no error when there is no doctor's opinion contained in the record that indicated greater limitations than those found by the ALJ."); *Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) ("A fundamental problem is she offered no opinion from any doctor to set sitting limits, or any other limits, greater than those the ALJ set.").

### B.    Plaintiff's Credibility Analysis

The regulations set forth a two-step process for evaluating a plaintiff's statements about her impairments. *See* 20 C.F.R. § 416.929. An ALJ first determines whether a medically determinable impairment "could reasonably be expected to produce the pain or other symptoms alleged." However, "statements about your pain or other symptoms will not alone establish that you are disabled." 20 C.F.R. § 416.929(a).  If a claimant's pain could reasonably be expected to produce the pain or symptoms alleged, the ALJ will then "evaluate the intensity and persistence" of the plaintiff's symptoms and determine how they limit the plaintiff's "capacity for work." 20 C.F.R. § 416.929.

In applying the second step, the ALJ assesses whether medical evidence substantiates the plaintiff's symptoms. *See* Soc. Sec. Ruling 16-3p (S.S.A. Oct. 25, 2017). If medical evidence does not confirm the intensity and persistence of the claimed

symptoms, the ALJ considers a list of non-exhaustive factors. *See, id.* "An ALJ is only required to explain the weight given to a claimant's statements in a manner sufficient to provide a fair sense of how the ALJ assessed the claimant's testimony." *Charles G.*, 2022 WL 2715676, at *5 (citing Social Security Ruling ("SSR") l6-3p). "An ALJ's assessment of a plaintiff's subjective statements of symptoms need not be flawless and is entitled to deference unless it is 'patently wrong,' which is a 'high burden.'" *Charles G.*, 2022 WL 2715676, at *5 (citing *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015); *Turner v. Astrue*, 390 F. App'x 581, 587 (7th Cir. 2010)). Only when an ALJ's assessment lacks *any* explanation or support will a court declare it to be 'patently wrong.' *Charles G.*, 2022 WL 2715676, at *5 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

The ALJ found that Plaintiff's allegations of disabling symptoms were not entirely consistent with the objective medical evidence. Plaintiff finds fault with this analysis for two reasons. First, she argues that Plaintiff improperly discounted Plaintiff's testimony as to her subjective complaints of pain and ability to participate in actives of daily living. Plaintiff also asserts that the ALJ failed to articulate how the performance of Plaintiff's daily activities showed how Plaintiff could perform the daily requirements of a job. *See, e.g.*, *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) (the Seventh Circuit has repeatedly cautioned ALJs not to equate activities of daily living with those of a full-time job).

An ALJ may not simply disregard a claimant's subjective complaints of pain, however, she may view discrepancies with the medical record as probative of exaggeration. *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("discrepancies between objective evidence and self-reports may suggest symptom exaggeration."). Here, the ALJ

noted that the objective evidence did support the existence of severe impairments, however, she found Plaintiff's subjective complaints "not entirely consistent" with that evidence.

For example, the ALJ indicated that Plaintiff consistently reported chronic pain, however, her exams were relatively normal.  She noted that Plaintiff's x-ray images showed no evidence of acute fracture deformity or destructive process, and her examinations indicated normal range of motion and full strength (Tr. 120).  Similarly, while the ALJ found that Plaintiff suffered from migraine headaches, she also noted that Plaintiff's providers routinely described her as having no distress.  Plaintiff also had normal imagining results, and she had not been referred to a neurologist for further treatment (Tr. 120).  The ALJ also observed that some of Plaintiff's psychological examinations revealed difficulty in areas such as concentrating, motivation, depression, and Plaintiff was observed being tearful and anxious.  However, other exams showed that Plaintiff was taking medications and showed normal behavior, insight, and judgment (Tr. 121).  In all, the ALJ gave multiple valid reasons for finding that the evidence did not completely support Plaintiff's allegations of disabling symptoms.

Moreover, the relevant question here is what limitations resulted from Plaintiff's impairments. Plaintiff's brief offers no clarity on what additional limitations were lacking in the ALJ's analysis or unaccounted for in her RFC. *See, e.g.*, *Gedatus*, 994 F.3d at 905 (plaintiff "has not pointed to any medical opinion or evidence to show [her impairments] caused any specific limitations."); *Fanta v. Saul*, 848 F. App'x 655, 659 (7th Cir. 2021) ("[P]laintiff does not point to any objective evidence or medical opinions in the record

that support stricter limitations. She also does not say what stricter limitations she requires."); *Jozefyk, 923 F.3d at 498* ("It is unclear what kinds of work restrictions might address [plaintiff's] limitations … because [s]he hypothesizes none."). As the ALJ pointed out, while the evidence supported the existence of severe impairments, many of her exams also resulted in normal findings.  These normal examination results, which make up much of the medical record, certainly amount to substantial evidence to support the ALJ's findings of inconsistencies in analyzing Plaintiff's subjective complaints.

Finally, to the extent the ALJ's subjective symptoms analysis was lacking, it was not "patently wrong" so to require remand.  *See Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013); *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (Observing that the ALJ's subjective symptoms analysis "was not without fault" but finding that it was still "adequately supported by evidence in the record" because the ALJ reasonably relied on other factors).  While there is certainly evidence to support the existence of severe impairments, there is also evidence of normal exam findings, and Plaintiff has not pointed to any medical opinion or evidence to show her impairments caused any specific limitations beyond those assessed by the ALJ.  *See, e.g., Gedatus*, 994 F.3d at 905.

### C.    Opinion Evidence

Finally, Plaintiff argues that the ALJ erred in her evaluation and discussion of the state agency medical opinions. Specifically, Plaintiff complains that the ALJ did not adequately explain the concepts of supportability and consistency as required by 20 C.F.R. § 404.1520(c).  The Regulation provides in pertinent part that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any

medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." It also identifies specific factors for an ALJ to consider, including supportability, consistency, relationship to the claimant (length, frequency, purpose, and extent of the relationship), specialization, and other factors. 20 C.F.R. § 404.1520c(c)(1). The Regulation specifies that the supportability and consistency of a physician's opinion are the most important factors and that the ALJ will explain how she considered these two factors. 20 C.F.R. § 404.1520c(b)(1). But the ALJ need not explain how she considered the remaining factors. 20 C.F.R. § 404.1520c(b)(1).

The ALJ supported her finding that the four state agency opinions were "somewhat persuasive" by citing to multiple medical citations in the record. While Plaintiff argues that the ALJ needed to better articulate the factors in 20 C.F.R. § 404.1520(c) by conducting a more thorough comparison between the opinions, she does not explain how the ALJ should have weighed the opinions differently and does not point to any specific evidence that could show why the ALJ's rationale was unreasonable. Thus, Plaintiff has failed to show any error in the ALJ's analysis. *See Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021) (Plaintiff "bears the burden of proving that she is disabled. … Even if reasonable minds could differ on the weight the ALJ gave to the medical evidence, we will not substitute our judgment for that of the ALJ's by reweighing the evidence.").

<u>**Conclusion**</u>

After careful review of the record as a whole, the Court is convinced that the ALJ's findings are supported by substantial evidence.  The final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of Defendant.

**SO ORDERED.**

Dated: September 28, 2022

_____
DAVID W. DUGAN
United States District Judge